STATE *EX REL.* NATIONAL BANK OF NEWBERRY v. CROMER.

1. ASSESSMENTS FOR TAXATION—SUPERVISION BY COURTS.—Section 171 of the General Statutes, declaring that "the collection of taxes shall not be stayed or prevented by any injunction, writ, or order issued by any court or judge thereof," and section 269, which provides that "no

writ, order, or process of any kind whatsoever staying or preventing any officer of the State charged with a duty in the collection of taxes from taking any step or proceeding in the collection of any tax, whether such tax is legally due or not, shall in any case be granted by any court or the judge of any court," do not prohibit the courts from exercising proper control over officers charged with the *listing and assessment* of property for the purpose of taxation, where they proceed contrary to law.

2. IBID.—THE AUDITOR has a special statutory jurisdiction, and the facts which give that jurisdiction cannot be presumed, but must appear affirmatively, except where the question arises upon an auditor's deed under a sale for delinquent taxes, which is *prima facie* valid.

3. IBID.—POWERS OF COMPTROLLER GENERAL.—The tax laws of this State give to the comptroller general the right to reduce assessments of property, but no right to increase valuations is given to him, and the county auditor is expressly forbidden to increase the return of a taxpayer except by authority of the board of assessors. Therefore, where a taxpayer makes a return which is submitted by the auditor to the township board of assessors, who make no objection to the return, and it is then approved by the county board of equalization, the subsequent order of the comptroller general directing an increase in the valuation of the property covered by such return is without authority, and the action of the auditor under such order was illegal. The assessment should have been entered by the auditor on the tax duplicate as returned by the taxpayer and as passed and approved by the legal boards.

4. PUBLIC OFFICERS—MANDAMUS—The duty of the auditor to enter the assessment as fixed by these boards being specific and ministerial, and individual rights being dependent thereon, mandamus is a proper remedy to require him to properly discharge this duty.

5. IBID.—IBID.—TAX LAWS.—This principle is not affected by the special provisions giving to the taxpayer the right to pay under protest and sue to recover the amount illegally charged. If this remedy be applicable, it is not adequate, and therefore mandamus will lie.

Before HUDSON, J., Newberry, November, 1891.

In this case the Hon. Thomas B. Fraser, Judge of the Third Judicial Circuit, and Hon. James Aldrich, Judge of the Second Circuit, sat in the places of Mr. Justice McGowan disqualified by interest, and Mr. Justice Pope, who as attorney general had been of counsel in the court below. It was an action in the name of the State of South Carolina *ex relatione* The National Bank of Newberry, S. C., against Wallace C. Cromer, as county auditor

of Newberry County. It was commenced by the following petition.

The petition of the National Bank of Newberry, South Carolina, a body corporate and politic under the laws of the United States, respectfully sheweth unto your honor :

I. That your petitioner is duly incorporated under the laws of the United States of America, and by charter issued in conformity with the same, and as such entitled to sue and be sued, plead and be impleaded in all the courts of the said State.

II. That under the sanction of the laws of the said State, and in pursuance of the usages in such cases, your petitioner, in behalf of the shareholders of its capital stock, made a return in the month of February, 1891, for the fiscal year commencing on the first day of November, 1890, to Wallace C. Cromer, then and now auditor of the said county, of the value of the real and personal property constituting the assets of the said bank, and expressing the value of the shares of its capital stock, and in such return declared the value of the personal property of the said bank to be one hundred and fifty thousand dollars, liable for taxation during the said fiscal year under the laws of the said State, such return being made upon the blank form authorized in such cases, and duly verified by the oath of Robert L. McCaughrin, president of the said bank, and filed according to law.

III. That such said return of personal property was received and filed without objection by the said Wallace C. Cromer, as auditor as aforesaid ; and no complaints or objection was made to the same by him, the said auditor.; nor did he ever have any proceedings, or take any steps, looking to increasing the valuation aforesaid of the said personal property ; but he allowed the said return to remain unaltered in items and amounts.

IV. That thereafter the board of assessors of township number one, or Newberry township, of the said county, where the said bank has its place of business and makes returns, passed the said return without alteration or objection.

V. That thereafter the county board of equalization for the said county, after due and serious inquiry into the said valuation of the said personal property, approved and adopted the valuation in said return made, and left the said personal property standing

for taxation at the said sum of one hundred and fifty thousand dollars.

VI. That so the matter stood until the month of     , 1891, when the said auditor added to the valuation of the said personal property eighty thousand dollars, and entered that property on his list and on his tax duplicate as of the value of two hundred and thirty thousand dollars, and thereby charged that property, and your petitioners, with the payment of taxes amounting in the aggregate to three thousand one hundred and five dollars instead of two thousand and twenty-five dollars, which would have been the tax on the said property at the valuation of one hundred and fifty thousand dollars, alleging as the sole reason for such increased valuation (and no doubt correctly) the order of one W. H. Ellerbe, styling himself comptroller general of the said State.

VII. That the said tax duplicate requires the county treasurer for the said county to collect from your petitioners the said sum of three thousand one hundred and five dollars as the taxes on the said personal property for the said fiscal year, and the said treasurer will be compelled so to do, unless the said tax duplicate is corrected.

VIII. That your petitioner has resorted to all the lawful means known to it to procure the reduction of the said valuation to the sum returned by your petitioner and adopted by the said township board of assessors and the said county board of equalization, to wit, one hundred and fifty thousand dollars, by applying to the said W. H. Ellerbe, comptroller general, to restore the valuation at the last named sum, and by demanding of the said auditor, in writing, the same correction; yet the said W. H. Ellerbe, comptroller general, refused to correct the erroneous and arbitrary valuation of two hundred and thirty thousand dollars, and the said auditor has refused to correct his said list and his said tax duplicate.

IX. That your petitioner is advised that it has no remedy for the above described illegal proceedings on the part of the said auditor, except the writ of mandamus, to compel him to make the proper corrections in his said list and in his said tax duplicate.

Wherefore your petitioner prays that your honor will grant your petitioner the writ of mandamus, commanding the said

Wallace C. Cromer, as auditor of the said county, to correct his said tax list and his said tax duplicate, so as to place the taxable personal property of your petitioner at the valuation of one hundred and fifty thousand dollars, and set the tax payable on the said personal property for the said fiscal year at two thousand and twenty-five dollars.

And that your honor will grant your petitioner such other and further relief as may consist with law and be required by the circumstances of the case. And your petitioner will ever pray, &c.

This petition was duly verified. His honor, Judge Hudson, granted an order to show cause in the usual form, and the auditor made return as follows:

Wallace C. Cromer, as county auditor of Newberry County, making return to the rule issued herein, and dated 16 November, 1891, respectfully shows to the court:

1. That he made up the tax duplicate for Newberry County for the collection of the State, county, school, and railroad taxes for the fiscal year 1890–91, as required by law and by the forms and instructions given by him by the comptroller general of said State.

2. That on the 5th day of October, 1891, he turned over to the county treasurer of said county, for the collection of said taxes, duplicate referred to in the petition, and took his receipt for an abstract thereof, which is hereto annexed as exhibit A, and as a part of this return. Y. J. POPE,
as Attorney General,
Attorney for Auditor W. C. Cromer.

An order for the writ was granted and subsequently the judge filed the following decree, omitting its statement of the petition:

The return is equivalent to a demurrer to the petition, and in the argument all its allegations were treated as true. The jurisdiction of the court was challenged, and, besides this, the only other and leading question raised and argued was whether the comptroller general has the authority thus to raise the assessed valuation of the personal property of a banking corporation. After argument, I held both issues in favor of the petitioners and

ordered the writ to issue, giving orally my reasons briefly for so holding, and reserving until a later day time in which to file a written opinion. I proceed now to do so, with all possible dispatch, because the matter is of moment to the taxpayers and to the State, and ought at this particular juncture to be heard by the Supreme Court before the time for collection of taxes expires, and while the legislature is in session.

First, then, as to the power of the court to grant the writ, and whether or not the writ of mandamus is the appropriate remedy. I take it for granted that it will readily be conceded that to compel an officer of the county to do and perform a merely ministerial act plainly required of him by law, the writ of mandamus is the appropriate remedy, and the Court of Common Pleas has jurisdiction to grant it, and in a proper case it will do so, unless expressly prohibited by statute. This speedy and efficacious remedy will not be denied the aggrieved taxpayers by the courts unless compelled to withhold it by express statutory enactment.

Counsel for the respondent contended that such prohibition is contained in sections 268 and 269 of the General Statutes. It is a sufficient answer to this argument to say that these sections have reference to the collection of an alleged illegal tax, and the courts are forbidden to interfere with the action of the tax collector by injunction, mandamus, or any other extraordinay proceeding or writ. The taxpayer is compelled first to pay under protest, and then to proceed to recover back the tax by suit, as specially directed in the act. But the present petitioner is not seeking to interfere with the duties of the tax collector, but only asks to have the auditor place in the hands of the treasurer the lawful valuation of his property, and not that which is unlawful. The petitioning bank desires to avoid being placed in the dilemma provided for in sections 268 and 269, and to that end prays the court to compel the auditor to deliver to the treasurer the correct and lawful assessment of its property, as fixed by the only boards having jurisdiction in assessing it. The fact is, that sections 268 and 269 render the present proceeding not only vitally important, but essentially necessary to the taxpayers, because it is the only possible mode by which the taxpayer can save himself from the hard ordeal prescribed by those severe enactments.

I hold, therefore, the court has full power to issue the writ in this proceeding, and that there is no other remedy known to the law by which the wrong herein complained of can be redressed so speedily and so adequately.

The next question is as to the authority of the comptroller general to direct the auditor to raise the valuation of personal property after it has been considered, scrutinized, and finally fixed by the auditor, the township assessors, and county board of equalization. He certainly has no such authority under the statutes of the State. The auditor and the said boards are the only persons having authority to assess for taxation the personal property of the people and such corporations as banks, and with this valuation of personal property no officer of the State can interfere. With their valuation of real estate no one can interfere except the State board of equalization.

As well might the comptroller general, by his mandate to the county auditor, raise the valuation of all the real estate of the county, or real estate of an individual or individuals, after the final action of the State board of equalization, as to raise the valuation of personal property after the final action of the county boards. In no act or section of an act of the legislature can such power be found conferred, or attempted to be conferred, upon him. His control and supervision over county auditors does not go beyond furnishing them with proper books, blanks, forms, instructions as to their general duties, and the like, but not to the valuation and assessment of property, over the action of township assessors and county and State boards of equalization; in so far as their valuation of property is concerned he has no control, and from their judgment there is no appeal to him or to any one else. It is final, and the auditor must accept and place the same on his tax list and duplicate. If he refuses, he can be compelled to do so by the writ of mandamus. It is his plain statutory duty.

It would be alarming to the taxpayers of the State, if, after their property has been assessed by boards specially charged·by law with that duty, any one man, be he auditor or comptroller general, could, without notice and without hearing, increase arbitrarily such valuation. The same law applies to the assessment of the property of the individual citizen as to that of a bank,

and the law is equally jealous of the rights of both, and no more exacting in regard to the one than the other.

I find, therefore, as matters of fact, that the allegations of the petition are true, and, as matter of law, that the petitioner is entitled to the writ prayed for; and, for the reasons given, I signed the order of November 18th, instant.

Next followed the following order:

Appeal having been taken from the order rendered in the above stated cause; ordered, that all proceedings therein be stayed pending said appeal, and that John M. Kinard, clerk of said court be, and he is hereby, restrained from issuing the writ directed by said judgment until the determination of said appeal.

J. H. HUDSON,

Nov. 20th, 1891.                    Presiding Judge.
  At Chambers.


Subsequently his honor filed the following paper:

On the 18th day of November last, while holding the Court of Common Pleas for the County of Newberry, I heard this application for a writ of mandamus to compel the auditor of the county, W. C. Cromer, to restore to his tax list and duplicate the assessment of the property of the Bank of Newberry as lawfully fixed by the county board and afterwards increased upon the order of the comptroller general. The prayer of the petitioning bank was granted, and final judgment signed, directing the writ to issue. I announced my reasons for this judgment orally and reserved time to reduce the same to writing.

Soon thereafter court was adjourned *sine die* and I started for home. On the morning of November 20th, at Sumter, as I was in the act of taking the hack for the depot, I was met by D. A. Townsend, Esq., assistant attorney general, with the notice of appeal, and with an application for an order staying the execution of the final judgment of November 18th pending the appeal. He stated that in his opinion the notice of appeal operated as a stay of execution, but as there might be a question upon this point, the attorney general preferred an order from me. It struck me at the time that notice of appeal stayed further pro-

ceedings below, and without hesitation, and without doubting for a moment, I signed the order and hastened to the train.  No statutes were asked for, and no argument was made, as none was deemed necessary.  In the hurry of the moment I signed what I regarded a superfluous but harmless order under the view I took of the provisions of the Code, and the amendment of 1889, relying upon my recollection of these acts, not having them before me.

It is now moved before me by the attorney for the bank to rescind my order of November 20th, upon the ground that it was granted without notice of the motion, and without proof of facts going to show the defendant to be entitled to it; and upon the further ground that under section 452 of the Code, proceedings in mandamus are not affected by sections 345 to 357 of the Code, in so far as a stay of proceedings pending appeal is concerned, nor by the act of 1889 amending section 356.  After hearing argument upon this motion and after examining the statutes, I am satisfied that I was in error in granting the stay of the execution of final judgment, under a clear misapprehension of the statutes regulating appeals to the Supreme Court.   Section 452 of the Code is not affected by the act of 1889, vol. 20. page 355, Statutes at Large.  This act is merely amendatory of sections 345 and 356, and in no manner affects section 452, so that proceedings in mandamus and prohibition still remain unaffected by the chapter regulating appeals to the Supreme Court.   The wisdom of excepting judgments in such cases from the operation of section 356 is manifest, because ordinarily a stay of judgment in mandamus or prohibition pending appeal would destroy the remedy, or render it nugatory.

The case under consideration is a striking illustration of the fruitlessness of the judgment against the auditor, if the notice of appeal operates a stay, or if my order of November 20th is to stand, because before the appeal is perfected and heard by the Supreme Court, the treasurer of Newberry will have enforced the payment of the illegally assessed tax, and the fruits of the judgment will have been lost to the bank.   In signing the order at Sumter I did not regard it an act of judicial discretion, but simply an act of compliance with the statutes.   In this I was in

error. If it is to be regarded as an act of judicial discretion, it is very clear that it was discretion improvidently and improperly exercised, being done upon an *ex parte* application and without affidavits of facts and circumstances showing the respondent to be entitled to the stay. It is possible, if not probable, that the order may deprive the bank of the benefit of the order for the writ of mandamus.

There is to my mind a more fatal objection to my order of November 20th, than any which have been urged, and that is the question of jurisdiction. I had ceased to hold the courts of the Seventh Circuit, and of course had no jurisdicion to sign an order affecting a final judgment of any court in that Circuit. In this case I had rendered the final judgment and placed it on file. The fact that I had reserved further time in which to reduce to writing the reasons which moved me to render the judgment did not give me further control of the case. When a judge has ceased to hold the courts of any Circuit other than his own, his jurisdiction and authority therein are at an end. He may reserve his judgment in a case submitted, and after leaving the Circuit may write his judgment and have it filed; or after his judgment has been filed he can direct the clerk to correct a mere clerical error. See the case of *Chafee & Co.* v. *Rainey*, 21 S. C., 11. Further than this, he cannot go except to hear from an adjoining Circuit certain motions in certain emergencies specially provided for by statute, but not the motion made before me at Sumter.

The order I there signed on November 20th is, in my opinion, after a careful examination of the statutes and decisions of the Supreme Court, an absolute nullity, and should be so regarded and treated by all parties to these proceedings in mandamus and by the officers of court. No order that I can now grant would have any more virtue, because I am entirely without jurisdiction to modify, reverse, or stay any final judgment rendered by me and placed on file while holding the courts of the Seventh Circuit. If this view be correct, the order for the writ of peremptory mandamus placed on file in the Court of Common Pleas for the County of Newberry, November 18, 1891, at the suit of this relator remains of full force, and is not stayed. It was error in

me to suppose that in reserving further time in which to file a written opinion, I had reserved any control whatever of the judgment on file. The present motion to rescind the order of stay cannot be granted for want of jurisdiction, and I can do no more than to declare that order to be, in my opinion, null and void.

In conclusion, I will remark that even if the order granting a stay was valid, it expires by the limitation of subdivision 6, section 402, of the Code, after twenty days, having been granted upon an *ex parte* application, if that section affects orders in mandamus, but according to section 452 it does not. The object of the legislature being to leave proceedings in mandamus and prohibition to be governed by the common law and former rules of practice until otherwise specially provided by the legislature. I deem the order of November 20, signed by me at Sumter, to be inoperative and void for want of jurisdiction.

Thereupon the clerk of the court of Newberry issued a writ of mandamus, which was obeyed by the auditor.

The respondent gave notice of appeal from the order granting the writ and also from the rescinding order of December 7. His grounds of appeal appear in the opinion.

*Mr. McLaurin*, attorney general, for appellant.  ·

*Messrs. J. F. J. Caldwell* and *J. Y. Culbreath*, contra.

February 11, 1892. The opinion of the court was delivered by

MR. JUSICE FRASER. This case before the Supreme Court on appeal from an order of Judge Hudson, made at Newberry, directing a peremptory *writ of mandamus* to issue to Wallace C. Cromer, as auditor of Newberry County, and a case *Ex parte The National Bank of Newberry, South Carolina*,[1] being an original application to the Supreme Court for a peremptory *writ of mandamus* to be directed to Calhoun F. Boyd, as county treasurer of Newberry County, were heard together by this court. Both cases refer to the entries on the tax duplicates

---

[1] Next case *infra*, p. 233.

of Newberry County against the National Bank of Newberry, South Carolina, for the fiscal year commencing 1st November, 1890, involving therefore the same matter. Most of the questions raised are the same in both cases, but with difference enough to make it better to have a separate opinion and judgment of this court in each case.

We will first consider the appeal in the case against Wallace C. Cromer, as auditor of Newberry County. The facts alleged in the petition for *writ of mandamus* in this case are admitted to be true by the return of the respondent, Wallace. C. Cromer, the auditor, in which no new material fact is set up as an answer or defence to the case made by the petition. These facts will be found set out with more particularity and more in detail in the petition and return. They are, however, briefly as follows :

The petitioner, through its president, R. L. McCaughrin, in February, 1891, made the usual return of personal property for the fiscal year commencing 1st November, 1890, to Wallace C. Cromer, the auditor of Newberry County, in which said personal property was valued at $150,000. This return was verified by the oath of the president and duly filed. This return was received without objection of any sort by the auditor, who did not take any steps looking to increasing the valuation of the said personal property, and the return was left unaltered by him in items and amounts. The township board of assessors passed this return without alteration or objection. Thereafter the county board of equalization, "after due and serious inquiries into the said valuation, approved and adopted the valuation in said return made." Afterwards the said auditor added to the said valuation $80.000, and entered that property on his list and on his tax duplicate as of the value of $230,000, thus charging the said personal property with the payment of taxes amounting, in the aggregate to the sum of $3,105, instead of $2,025, as it had been. The said auditor alleged as *his sole reason* for such increased valuation *the order of W. H. Ellerbe, comptroller general* of the said State. The increase of the tax is, therefore, $1,-080.

The petition alleges that the said tax duplicate requires the county treasurer to collect the said sum of $3,105, and that he

will be compelled to do so unless the said tax duplicate is corrected so as to restore the valuation of the said personal property and the said tax to what they were before the change made by the order of the comptroller general. Application has been made to the said auditor and to the comptroller general, and they have refused to correct the said list and tax duplicate and restore the valuation of the said personal property and the tax thereon to what they were before the said change was made. The petitioner prays for a *writ of mandamus* commanding the said Wallace C. Cromer, as auditor of said county, to correct his said tax list and tax duplicate, so as to place the taxable personal property of the petitioner at the valuation of $150,000, and to set the tax payable on the said personal property for the said fiscal year at $2,025, and for such further relief as may consist with law and be required by the circumstances of the case.

The return of the auditor did not controvert any of these allegations of fact or raise any new issues of fact in the case.

The following is the order of Judge Hudson: "On hearing the return of the respondent, Wallace C. Cromer, auditor, to the order to show cause heretofore issued in this proceeding, and after argument of counsel, it is ordered, that the peremptory *writ of mandamus* applied for, be issued by the clerk of this court forthwith, requiring the said Wallace C. Cromer, as auditor of said County of Newberry, to forthwith correct his tax list and tax duplicates, so as to restore the valuation of the personal property of the said relator for the fiscal year commencing 1st November, 1890, to one hundred and fifty thousand dollars; and also requiring him, the said auditor, to make the corresponding reduction in taxes payable on personal property of the relator, the said National Bank of Newberry. The reasons moving the court to this decision will be filed hereafter, in writing, with the clerk of this court.                      J. H. HUDSON,

"November 18, 1891.                      Presiding Judge."

Notice of intention to appeal was duly given. Subsequently Judge Hudson filed with the clerk his reasons for signing the above order.

There were two orders in reference to a stay in issuing the *writ of mandamus*. One was dated 20th November, 1891, re-

15—35

straining the issuing of the writ until the determination of the appeal, and the other was dated 7th December, 1891, and in it Judge Hudson held that the order of 20th November, 1891, was void for want of jurisdiction to hear the motion, it having been heard at Sumter, after he had finally adjourned the courts of the 7th Circuit.   The auditor then obeyed the writ, so far as to correct the tax list and duplicate remaining in his office.   The writ bears date 8th December, 1891.   The decree of Judge Hudson, dated 23d November, 1891, will be found in the "Case" and it is to this, perhaps, that many of the exceptions have been taken, especially as there has been no order dated 7th November, 1891, as appears to be the case in the notice accompanying the grounds of appeal.

The grounds of appeal are, that his honor erred, 1. In deciding that he had jurisdiction to hear the proceeding.   2. In deciding that the *writ of mandamus* was the proper remedy in this case.   3. In deciding that the court had full power to issue the writ.   4. In deciding that there is no other remedy known to the law by which the wrong complained of in this case could be redressed so speedily and so adequately.   5. In deciding that the auditor, the township board of assessors, and the board of equalization are the only persons having authority to assess for taxation the personal property of the people and such corporations or banks, and that with their valuation of personal property no officer of the State can interfere, and with their valuation of real estate no one can interfere except the State board of equalization.   6. In deciding that there is no appeal from the valuation placed on property by the board of township assessors and the county and State boards of equalization.   7. In deciding that the judgments of assessors and State and county boards of equalization, and the value they place on property is final and that the auditor must accept it and place the same on the tax list and duplicate ; and that if he refuse to do so, may be compelled to do so by *writ of mandamus.*  8.   In finding, as a matter of law, that the petitioner was entitled to the writ and in granting the same.   9. In deciding that sections 237, 268, and 269 of the General Statutes of South Carolina do not apply to a case like this.   10. In deciding that the petitioner herein is not

seeking to interfere with the collection of taxes or with the duties of the tax collector. 11. In deciding that in a case like this sections 268 and 269 rendered a proceeding of the nature herein sought, vitally important and essentially necessary to the taxpayer. 12. In deciding that the comptroller general has no power to change or in any way interfere with the valuation placed on property by the auditor, board of assessors, and State board of equalization.

Several of these exceptions state the same propositions in different language, or, perhaps, with slight variations. The exceptions will not, therefore, be taken up *seriatim*, but we will consider the questions we think raised by them in what seems to us the most natural order.

I. Is this one of the cases which comes within the purview of sections 171 and 269 of the General Statutes, in which it is provided that no court, or any judge of any court, shall issue any writ of injunction, *mandamus*, or other writ or order, or process of any kind? The prohibition in section 171 is only in cases of *the collection of taxes*, and in section 269 it is only in cases of "any officer of the State charged with a duty in the *collection of taxes*." No reference is made in either section to any restriction on the courts in the matter of *assessments* of taxes, and the latter section, 269, in the words, "the person against whom any taxes shall *stand charged* upon the books of the county treasurer," ought certainly to be held to refer to such taxes as are there properly and regularly charged.

In the case of *State* v. *County Treasurer* (4 S. C., 520), the statute, as it then stood, was held constitutional by a divided court, Chief Justice Moses dissenting. This was a case against the county treasurer for a writ of prohibition, in which the opinion of the court was delivered by Associate Justice Willard, and in which Associate Justice Wright concurred. In the case of *State* v. *Gaillard* (11 S. C., 309), the application was to this court for a writ of *mandamus*, directed to the county treasurer, commanding him to receive bills of the Bank of the State of South Carolina for taxes. In this case Chief Justice McIver, then Associate Justice, concurred, solely on the ground that the

constitutionality of the act had been settled by the case of *State v. The County Treasurer, supra.*

In *Chamblee* v. *Tribble* (23 S. C., 70), the action was brought to enjoin the county treasurer from collecting certain taxes for railroad purposes. The constitutionality of these provisions was again the subject of discussion. Mr. Justice McIver concurred with Chief Justice Simpson as to their constitutionality, the former solely on the ground that the matter had been settled in the preceding cases. Mr. Justice McGowan, Associate Justice, dissented in an opinion, in which he quotes from the dissenting opinion of Chief Justice Moses in *State* v. *The County Treasurer, supra,* the following language: "The power to tax is the most extensive and unlimited of all the powers which a legislative body can exert. It is without restraint, except by constitutional limitations. To tie up the hand that can alone resist its unlawful encroachments would not only render uncertain the tenure by which the citizen holds his property, but make it tributary to the unrestrained demands of the legislature." This language is quoted to show the importance of a strict construction of these sections of the General Statutes which prohibit the courts from exercising powers given to them by the constitution to protect the citizen in his rights of property against the demands of a public officer, which he claims to be, without authority of law.

It will be noticed that all three of these cases arose in reference to the officers charged with the *collection* of taxes. In the first case the prayer was for a writ of prohibition, in the second for a writ of *mandamus,* and in the third for a writ of injunction. In *Ex Parte Lynch* (16 S. C., 32), the application was for *mandamus* against the comptroller general, an officer whose duties refer to the listing and assessment of property for taxation. Constitutional questions were raised in the case. The *mandamus* was refused; but it is important to notice that in that case no claim was made that the prohibitions of sections 171 and 269 applied to the comptroller general. There was no interference with the collection of taxes.

It has never been questioned that the validity of an assessment of property for taxes, so far as depends on the regularity

of proceeding on the part of the auditor and other officers who are charged therewith, can be tested by the court in another way than by action to recover back the tax paid under protest as provided in section 268 of the General Statutes. It is well settled in this State that in any court in which a title is set up to land which has been sold for taxes, the validity of the tax title can be called in question. The tax title under section 313 of the General Statutes is only presumptive evidence that "every prerequisite of the law has been complied with." The proof of irregularities may be made by evidence *aliunde*, and thereby the assessment shown to have been irregular and void, and the title derived through it to be invalid. The question has never been made whether the method prescribed in section 268, General Statutes, is necessary, or even applicable, in cases of irregular methods of proceeding by officers charged with *the assessment* of property as contradistinguished from officers charged with the *collection of taxes.*

We hold, therefore, that there is nothing in sections 171 and 269 which prohibits the courts from exercising proper control over officers charged with the listing and assessment of the property of citizens for the purpose of taxation where they proceed contrary to law.

II. The next question which arises in the case is, whether the assessment of the personal property of the relator at $230,000, charged with a tax of $3,105, is valid, or whether the original assessment of the personal property at $150,000, charged with a tax of $2,025, is the valid one? It is not a question here as to which is the true valuation of the property, but which is the valuation ascertained by the officers and in the manner provided by law. The valuation of the property at $150,000 was duly sworn to in the return by the proper officer of the relator, The National Bank of Newberry, South Carolina. This valuation was not objected to by the township board of assessors, and was then approved by the county board of equalization.

This valuation, therefore, it was the clear duty of the auditor to place upon the tax list and tax duplicate, with the taxes chargeable upon it, unless under the circumstances and in accordance with the mode of procedure provided in sections 239,

240, 241, and 242, of the General Statutes. The auditor has a special statutory jurisdiction, and the facts which give that jurisdiction cannot be presumed, but must appear affirmatively. It is only by the provisions of section 313 of the General Statutes that the presumption in favor of the existence of all facts necessary to give regularity to the antecedent proceedings arose in favor of the auditor's deed under a sale for delinquent taxes. That presumption is confined to the tax title, and goes no further. In all other cases these facts must be proved. In this case it is not claimed, or even intimated, that the auditor himself proceeded under the circumstances and in the mode prescribed in sections 239, 240, 241, and 242, *supra*. It is, therefore, not necessary further to consider these sections in this case. The following is the statement of the action of the auditor in the petition, which is not denied in the return, and, therefore, must be accepted for the purposes of this appeal as true:

"VI. That so the matter stood until the month of             , 1891, when the said auditor *added* to the valuation of the said personal property $80,000, and entered that property on his list and his tax duplicate as of the value of $230,000, and thereby charged that property and your petitioner with the payment of taxes amounting in the aggregate to $3,105, instead of $2,025, which would have been the tax on said property at the valuation of $150,000, alleging, as *the sole reason for such increased valuation* (and no doubt correctly) *the order* of one W. H. Ellerbe, styling himself comptroller general of the said State."

Had the comptroller general any authority of law for making an order like this one, directing the auditor to raise the valuation of any particular property returned for assessment and taxation? By section 247 the comptroller general may direct the auditor, by written order, to *reduce* the valuation of real or personal property, and nothing is said as to the power to order an increase in valuation. Section 254 gives any person whose property has been assessed *above* its true value a right of appeal to the comptroller general from the county board of equalization, an appeal not from an act of the auditor, but from the judgment of the board on a question of value. Section 261 provides that the comptroller general shall prepare and

transmit to the auditors all proper forms and instructions which they are required to use and obey. We do not find anything in either of these sections, and our attention has not been called to any section which gives the comptroller general the right to make an order, or to the auditor the right to obey such an order, directing him to raise the valuation of personal property as made in any specific cases and passed upon by the township and county boards without change. The right of appeal to the comptroller general in cases of *excessive* valuation, of course, cannot confer the right in any case to increase the valuation.

By section 229, General Statutes, the auditor is expressly forbidden to *increase* the return as made by any taxpayer or his agent, except by authority of the board of assessors. In this case it is not claimed that the auditor proceeded as in a case where the property has not been listed at all, as in section 229, or that there have been any proper proceedings under sections 239, 240, 241, and 242. If the assessment, as it now stands, is valid, it is solely on the ground that the same was increased by order of the comptroller general. It is true, that the conduct of the auditor is placed on apparently a different ground in the case of the same relator against the county treasurer, but we are confined to the facts as they were admitted to be when the case was before Judge Hudson, from whose rulings this appeal has been taken.

We conclude, therefore, that in making the order relied on the comptroller general transcended his jurisdiction, and that the auditor had no right to obey the order and thus place upon his tax list and duplicate a valuation of this personal property, or to charge the taxes on that valuation other than the valuation of $150,000, as the same stood when it came to his hands, sworn to by the president of the bank, without objection by one board, and with the approval of the other board, and upon which the taxes should be charged on his duplicate.

III. In the view we have taken of this case, it was the plain ministerial duty of the auditor to place this personal property on his tax list and his tax duplicate at $150,000, the valuation which had been placed upon it by the oath of the president of the bank, and which was passed without objection by the

township, and approved by the county boards, and to charge it with the tax at that valuation $2,025, and nothing has occurred since to invest him with any discretionary powers in reference thereto. and the unauthorized order of the comptroller general does not change his relation thereto.    Wherever a specific duty is required by law of a particular officer, unattended with the exercise of any degree of official judgment or element of discretion, and on the performance of which individual rights depend, *mandamus* is the appropriate remedy for a failure or refusal to perform the duty.  High on Mandamus, section 80.    A commissioner for the selection of jurors was compelled by *mandamus* to strike from the jury list the name of a person not liable to jury duty.  *Ibid.*, section 90.    It has been held that the writ might be granted against assessors who had improperly assessed shares of bank stock owned by the relator to require them to *cancel or correct* the assessment.  *Ibid.*, section 140.    In *Hamilton* v. *The State* (3 Ind., 452), the auditor was compelled by *mandamus* to issue his duplicate for a tax on real property without adding thereto 15 per cent., illegally assessed by the State board of equalization.

It is claimed, however, that there is another and adequate remedy provided by sections 268 and 269, General Statutes.  In holding that these sections were constitutional, in so far as they prevented the courts from interfering with the *collection* of taxes, it was not necessary to hold, and this court did not hold, that there was any other adequate remedy besides those which the courts were prohibited from granting, or that the one given by these sections was adequate.    The dictum of Associate Justice Haskell in *The State* v. *Gaillard*, is all the authority we have on this subject.    Even if the remedy given in these sections were applicable in this case, it is not adequate.  "If the existing remedy is inadequate to place the injured party in the *same position* he occupied before the *injury* or omission of duty complained of, it is insufficient for the purposes of the rule under discussion, and will not prevent the interposition of the courts by *mandamus.*"    High on Mandamus, section 17.    It can hardly be said that in case of inability to pay the illegal tax, it is an adequate remedy if at the end of a long and expensive

law suit the taxpayer may succeed in consequence of the illegality in the assessment in preventing himself and family from being stripped by a tax execution of their household goods, and thus turned out of their homestead.

For these reasons we think that the relator is entitled to relief, and that a writ of *mandamus* is the proper remedy.

It is, therefore, ordered and adjudged, that the exceptions be overruled, and that the judgment and order appealed from be affirmed.