9544

NATIONAL UNION BANK OF ROCK HILL *ET AL.* v. NEIL, YORK COUNTY TREASURER.

FIRST TRUST & SAVINGS BANK OF ROCK HILL v. SAME.

(90 S. E. 745.)

1. TAXATION—INCREASING VALUATION—NOTICE—STATUTE.—Where the officers of a bank, in making return of the value of its stock for taxation to the stockholders under Civ. Code 1912, sec. 341, stated the capital, surplus and undivided profits, together with the amount of certain bonds claimed to be exempt, ending by stating the amount they considered liable for taxation, the county auditor, pursuant to direction of the Comptroller General, was authorized to increase the amount of the return by the amount of the bonds which were in fact not exempt, without notice and an opportunity to be heard, as required by section 399, requiring notice by the auditor to the taxpayer where he suspects or is informed that the making of a return

has been evaded, or that the return made is not full, is false or the valuation made is too low.

2. TAXATION—INSTRUCTION BY COMPTROLLER GENERAL—STATUTE.—Under Civ. Code 1912, sec. 411, making it the duty of the Comptroller General to give the auditor such instructions as he may deem necessary to carry out the tax laws, and to decide all questions arising thereunder, or in relation to the duty of any officer thereunder, and making his rulings binding on all county and municipal officers, the instructions of the Comptroller General are not effective if contrary to law, but must be obeyed until they are overruled by competent authority.

3. TAXATION—EXEMPTIONS—BANK STOCK.—In assessing the value of bank stock for taxation to individual stockholders under Civ. Code 1912, sec. 341, the county auditor properly refused to deduct from the assets of the bank the amount invested in securities owned by the bank and exempted from taxation to it, since a tax on the value of corporate shares in the hands of shareholders is not a tax on the corporation.

4. TAXATION—EXEMPTIONS—UNLAWFUL DISCRIMINATION.—The exemption of State bonds in ascertaining the value of shares of bank stock in the hands of shareholders is not an unlawful discrimination against Federal securities or other State and municipal bonds not so exempted.

5. TAXATION — EXEMPTIONS — PRESUMPTION. — There is a presumption against any surrender of the taxing power by the State.

6. TAXATION—BANK STOCK—VALUATION—STATUTE—KNOWLEDGE OF LEGISLATURE—PRESUMPTION.—The legislature, in passing acts taxing bank stock in the hands of shareholders, is presumed to have known and had in contemplation the rule of construction that, in fixing the value of shares of stock for purposes of taxation to the shareholders, no deduction is made on account of securities of the corporation exempt from taxation.

Before HON. H. P. GREEN, special Judge, York, August, 1915.    Reversed.

Actions by the National Union Bank of Rock Hill and others, and the First Trust & Savings Bank of Rock Hill and others, against Harry E. Neil, as Treasurer of York County. From a judgment for plaintiffs, defendant appeals.

FOOTNOTE.—As to deductions in taxation of shares of stock in hands of shareholders, see note in L. R. A. 1915c, 386 to 389, 45 L. R. A. 751.

*Mr. Attorney General Peeples,* for appellant, cites: *As to method of taxation:* Civil Code 1912, secs. 341 to 358; Const. 1895, art. X, sec. 5.    *Taxation on bank· shares:* 70 U. S. 229; 184 U. S. 111; 1 Cooley Taxation 709; 37 Cyc. 839; 32 A. & E. Enc. of L. (2d ed.) 356; 71 S. C. 244; 95 S. C. 687; 117 U. S. 129; 50 L. R. A. 513-527; L. R. A. 1915c, 386 to 389; 25 N. D. 625, 635; 3 Wall. 573; 94 Wis. 587; 85 S. C. 518.    *Exemption of State bonds in ascertaining value of shares:* Acts 1892, p. 29; 1893, p. 481; 121 U. S. 138; distinguishes 34 S. C. 213.

*Messrs. F. H. Dominick* and *W. H. Townsend,* of counsel for appellant.

*Messrs. Dunlap, Dunlap & Hollis* and *J. Harry Foster,* for respondent, cite: *As to method of assessment for taxation:* Civil Code 1912, secs. 341, 345, 349, 383, 386, 399; 35 S. C. 213, 233 and 245.    *Exemption of bonds:* 27 Stats. 346; 70 S. C. 433; 25 Stats. 1054; Const. 1895, art. X, secs. 1 and 4.    *Discrimination against holders of national bank shares:* 5 Fed. Stats. 157, sec. 5219; 100 U. S. 539; 105 U. S. 305 and 322; 113 U. S. 689.

The Circuit Judges having been called to the assistance of the Supreme Court,

October 14, 1916.

The opinion of the Court *en banc* was delivered by MR. JUSTICE HYDRICK.

These actions were brought under section 461, vol. I, Civil Code 1912, to recover certain taxes which plaintiffs allege were illegally assessed against the shares of the stockholders of the banks, and were paid under protest.    The plaintiff, Ira B. Dunlap, is a stockholder of both banks, and joins in the action as a plaintiff in behalf of himself and all other·

stockholders thereof.    The facts and applicable law of the two cases are so nearly alike that the decision in the first case will control the second.    Therefore, for convenience; only the first will be considered in detail.

Chapter XIV, vol. I, Civil Code 1912, treats of "The Assessment of Taxes."    Article VIII of that chapter provides "Special Rules as to Banks and Bank Stock," etc. Section 341, found in article VIII, reads:

"All shares of the stockholders in any bank or banking association, located in the State, whether now or hereafter incorporated or organized under the laws of this State, or of the United States, shall be listed at their true value in money, and taxed in the city, ward, town or incorporated village where such bank is located, and not elsewhere: *Provided,* That the words 'true value in money,' as used in this section, shall be so construed as to mean and include all surplus or extra moneys, capital and every species of personal property of value owned or in the possession of any such bank."

The other pertinent provisions of article VIII are that the real estate of banks shall be taxed where located, the same as that of individuals (section 343); that the president and cashier of each bank shall annually, between January 1st and February 20th, make out and return, under oath, to the county auditor, a full statement of the names and residences of its stockholders, with the number of shares held by each, and the actual value in money of such shares, with a description of its real estate (section 344); that on receiving such return, the auditor shall deduct from the total value of all the shares the value of the bank's real estate, as assessed on his duplicate, and the remainder of the total value of the shares shall be entered on his duplicate in the names of the owners thereof in amounts proportioned to the number of shares owned by each, and be charged with taxes at the same rate as charged upon the value of other personal property at the same place (section 345); that the bank may pay the

taxes so assessed and deduct the same from any dividend due or to become due on such shares (section 347) ; that if the return required by section 344 is not made, the auditor shall examine the books of the bank, and any of its officers or agents, under oath, together with such other persons as he may deem necessary, and make out the statement required and enter the value of the shares on his duplicate for taxation against the shareholders. Any officer of the bank failing to make the return, or wilfully making a false return, is liable to fine, not exceeding $1,000.

In compliance with these provisions of the statute, the president and cashier of the plaintiff bank made their return in 1913, giving the names and residences of the shareholders and number of shares held by each. The return did not state the total value of the shares in a lump sum, or the value of each share, but gave the data from which the value was to be determined as follows:

"The actual value thereof in money, including all surplus or extra moneys, capital, and every species of personal property, of value, in possession of this bank or banking association, as follows: Capital paid up, $250,000; surplus, $75,000; undivided profits, $281.13; every other species of personal property, none."

At the end of the return, the bank officers making it appended the following note: "Capital, $250,000; sur. and un. profits, $75,281.13—$325,281.13; less 50 per cent., $162,640.56—$162,640.57; less S. C. bonds, $25,000; less York Co. bonds, $7,000; less U. S. bonds not held for circulation, $25,000—$57,000. Amount liable for taxation, $105,640.57.

"We have not taken credit for U. S. bonds held for circulation, amounting to $200,000. If the other national banks of York Co. are allowed an exemption for bonds of this class, we wish credit for ours also."

Upon the return appears the following note made by the Comptroller General of the State:

12—S.C.—106

"If the market value of the shares cannot be ascertained, you will take, as the value of the shares, the capital, surplus and undivided profits, viz.: Capital, $250,000; surplus, $75,000; un. profits, $281; total value of shares, $325,281; less redemption Brown bonds and stocks, $25,000; amt. of full value of shares subject to taxation, $300,281; less 50 per cent., $150,140; amt. liable for taxation to the 2,500 shareholders in proportion to the number of shares held by each, $150,140.

"Any exemption of bonds of any nature other than redemption Brown consol bonds and stocks issued under the act of 1892 should not be allowed, and would be an illegal exemption."

In accordance with this direction of the Comptroller General, the auditor entered and charged reassessment on his duplicate to the shareholders of the bank in proportion to the number of shares held by each, disallowing the contention of the officers of the bank that, in ascertaining the value of its shares for taxation in the hands of the shareholders, $25,000 of United States bonds held by it, but not for circulation, and $7,000 of Ebenezer township (York county) bonds, which, by the terms of the statute under which they were issued (27 Stat. 346), are "exempt from all State, county and municipal taxes," should be deducted from the total value of its shares. This was done in September, 1913, and no notice thereof was given the bank.

The plaintiffs contend: First, that, as the return was accepted by the auditor without objection, passed by the township board of assessors, and the county board of equalization, the auditor was without jurisdiction or authority thereafter to increase the amount of the return, as made by the officers of the bank without notice and an opportunity to be heard, as required by statute in other cases where the valuation of property returned for taxation as made by a taxpayer is increased, and, also, that the direction of the Comptroller General was without authority of law. They

contend : Second, that, even if the action of the auditor, under
the direction of the Comptroller General, was in accord-
ance with law and valid, in so far as the right to notice and a
hearing is concerned, nevertheless, the exemption which
they claimed should have been allowed. The Circuit Court
sustained their first contention, and gave judgment in their
favor, but overruled their second contention. From this
judgment both sides appealed.

The Court erred in sustaining plaintiffs' first conten-
tion. The decision was rested on the authority of *Bank* v.
*Cromer,* 35 S. C. 213, 14 S. E. 493. But that case is easily
and clearly distinguished from this. In that case, the return
fixed the value of all the personal property of the bank at
$150,000, and did not give the data upon which that valua-
tion was based. The valuation was, therefore, an exercise
of judgment on the part of the officers of the bank upon
undisclosed facts, and when it was accepted by the auditor
and passed in turn by the local board of assessors and the
county board of equalization, it was held that it could not be
increased by the auditor on his own initiative, or by direction
of the Comptroller General, without notice and an opportu-
nity to be heard, as required by the statute (G. S., sec. 239,
now section 399, vol. I, Civ. Code 1912). In such cases,
the statute (G. S., sec. 229, now section 386, vol. I, Civ.
Code 1912) says the auditor shall state, in the column for
remarks opposite each taxpayer's name, in the return made
by him, any amount which he thinks ought to be added to the
valuation made by the taxpayer, but he shall not increase the
return, except by authority of the board of assessors. So
that, as the law then stood, the action of the auditor in
increasing the valuation put upon its property by the bank
was clearly illegal.

But the return in this case did not fix the value of the
property of the bank or of its shares, except as it was left to
be inferred from the statement of its capital stock, surplus,

and undivided profits.   It was, therefore, merely a matter of calculation, which did not involve the exercise of any judgment as to value, but followed, as matter of law, from the facts stated.   The note at the end of the return stated what, in the opinion of the officers of the bank, should be deducted in determining the value of the shares.   It was as if a taxpayer should return his property at the valuation of $500, and then add in a footnote that it was mortgaged to secure a debt of $300, and, therefore, the amount liable for taxation is $200—an unwarranted conclusion of law, not binding upon the auditor, who would, of course, list the property for taxation at $500.   In such a case no notice would be necessary, as the valuation made by the taxpayer would not be increased.

The statute (section 399) requires the auditor to give notice to the taxpayer in the following cases: Where he suspects or is informed that the making of a return has been evaded; or that the return made is not full, or is false, or the valuation made is too low.   The reading of the section shows that the object of requiring notice was to allow the production of evidence on the question at issue.   This case does not fall under either of the conditions specified, and no amount of evidence could have affected the issue, for it is one of law and not one of fact.

Besides this, the effect of the decision in *Bank* v. *Cromer* has been modified by statute.   That decision was filed in February, 1892.   At its next session, in December, 1892, the legislature passed an act, which provides that sections 239 to 244 of the General Statutes (now sections 399 to 403, vol. I, Civ. Code)—the same that were construed in *Bank* v. *Cromer*—shall be construed—"as giving full and complete power to the county auditor, independent of any right conferred upon county boards of assessors or other officers, as to securing a full and complete return of property for taxation in all cases as expressed in said sections, whether fraud-

ulently or otherwise improperly or incompletely made." 21 Stat. 81, now section 404, vol. I, Civ. Code.

By the terms of this section, the fact that the return made by plaintiffs had been passed by the boards of assessors and equalization did not preclude subsequent action by the auditor.

The fact that the auditor was directed by the Comptroller General in the matter is of no consequence. He might have acted of his own head. But section 411, vol. I, Civ. Code, makes it the duty of the Comptroller General to give the auditor such instructions as he may deem necessary to carry out the provisions of the tax laws, and to decide all questions arising thereunder, or in relation to the duty of any officer under the same, and his rulings are made binding upon all county and municipal officers. Of course, it is not meant that they would be effective, if contrary to law, but merely that underofficers must obey them, until they are overruled by competent authority.

The Court was right in its conclusion upon the plaintiffs' second contention. The rule and the reason upon which it is rested are clearly stated in the note to *In re First Nat. Bank,* L. R. A. 1915c, 386, 389, as follows: "It is quite generally held that in assessing the value of corporate stock for purposes of taxation a deduction should be made of the amount invested in national securities and other property owned by the corporation that is exempt from taxation when the tax is upon the corporation, but when the tax is upon the shares in the hands of the stockholders, or is assessed against the corporation as agent of the shareholder, to be deducted from the dividends, no deduction is to be made. The distinction is based upon the doctrine that capital stock or property and assets of the corporation, and the shares of stock in the hands of individual stockholders, are separate properties for the purpose of taxation. In fixing the value of shares of stock of a national

bank or other corporation for purposes of taxation, no deduction is made on account of the capital of the corporation invested in United States bonds, State bonds, and other securities which are exempt from taxation."

The authorities cited fully sustain the proposition stated, and show that the other contentions of plaintiffs are untenable.

The exemption of State bonds in ascertaining the value of shares in the hands of shareholders of the bank is not an unlawful discrimination, either against Federal securities or other State and municipal bonds not so exempted. *Chester* v. *White,* 70 S. C. 433, 50 S. E. 28; *Mercantile Bank* v. *New York,* 121 U. S. 138, 7 Sup. Ct. 826, 30 L. Ed. 895.

It is argued that the legislature intended that the township bonds should be exempted just as the State bonds are. It is significant that it has not said so in plain and unmistakable terms, as it has with reference to State bonds. No doubt the legislature intended that the township bonds should be exempted from taxation directly levied upon them, either as the property of a corporation or an individual. It has plainly said so. But we have seen that a tax upon the value of the shares of a corporation in the hands of the shareholders is not a tax upon the property of the corporation. They are separate and distinct properties. The presumption is against any surrender of the taxing power. Therefore, when the legislature has said, with regard to State bonds, that their value shall be deducted from the value of the assets of the corporation in ascertaining the value of its shares for taxation in the hands of the shareholders, and has not so said with reference to any other bonds issued by its authority, the conclusion is inevitable that it was not intended that other bonds should be exempted to the same extent—especially is this true in view of the well settled rule of construction hereinbefore stated, which

the legislature is presumed to have known and had in contemplation when these acts were passed.

· The judgment is reversed, and complaint·dismissed in both cases.

MR. CHIEF JUSTICE GARY, MR. JUSTICE FRASER and CIRCUIT JUDGES MEMMINGER, BOWMAN, SHIPP, MOORE, SEASE, SMITH, WILSON, DEVORE and GARY concur in the opinion of the Court announced by MR. JUSTICE HYDRICK.

MR. JUSTICE WATTS, *dissenting.*   I cannot concur in the opinion of Mr. Justice Hydrick.   I think that the plaintiffs' exceptions should be sustained.

Under the law all returns are required to be filed with the auditor between the 1st day of January and the 20th day of February.   It is not contested but that the banks performed this duty, and that the returns were acted upon by the county board and turned over to the auditor, and thereby became under section 345 a permanent record for the tax of that year.   When the return was accepted by the auditor without objection and passed by the township board of assessors and the county board of equalization, the auditor, or any one else, was without authority or jurisdiction thereafter to increase the return, and to arbitrarily order the increase without a hearing in the manner it was done was an illegal imposition of excessive taxes without authority, and verging on tyranny.   The auditor had no authority, neither had the Comptroller General any authority, to change the returns made and accepted in accordance with law in this case.

The second contention of the plaintiffs should also be sustained.   The legislature exempted the county bonds from taxation in no uncertain terms, for it provides:

"Said bonds shall be exempt from all taxes, State, county, and municipal taxes."

Could any language be plainer or .more comprehensive? The object unquestionably was that the bonds would bring a better price being exempted from taxes, and no doubt·they did.   The county selling the bonds got a higher price as intended, and the plain intent of the legislature was that they be exempt of all taxes in whosesoever hands they might pass to, and in order that they might be taxed, it was left to the astute mind of some lawyer to suggest the refined difference between the bonds being owned by a corporation or individual and to have the Court to write in the plain words of an act of the legislature this refined distinction.   The bonds in question belong to the shareholders of the bank.   All the assets of the bank belong to its stockholders and shareholders.   The bonds in question by act of legislature are exempt from taxes; it clearly was the intention of the legislature to exempt them whether owned by the individual or a corporation.

If a bank in South Carolina cannot own bonds, issued under the authority of its legislature, exempt from taxation without paying taxes thereon, notwithstanding this plain exemption, then the result will be that the banks of this State cannot afford to compete with banks outside of the State in purchasing bonds, and the bonds will be owned by nonresident owners and escape taxation.   No one ever heard of a nonresident paying any taxes on any bond held outside of the State.

If the tax department would display the same zeal in getting on the tax books the invisible and intangible property in the State that escapes taxation as it does in collecting the visible and tangible property, such as real estate, banks, factories, railroads, and other corporations, then it would not be put to the necessity of claiming·the refined difference, as is made in this case, between an individual owning the bonds escaping taxation and the bank corporation required to pay.

To require the bank to pay on these bonds, in view of the

act of the legislature exempting them, is a great hardship, and for an individual to act under such circumstances as developed herein, he would be met with a charge of sharp practice and attempt to overreach the purchaser of the bonds, acting in good faith, thinking he was purchasing a bond, which was, what it purported to be, exempt by an act of the legislature "from all taxes, State, county, and municipal taxes."

For these reasons I think the plaintiffs were right in their contentions.

MR. JUSTICE GAGE concurs in the dissenting opinion of MR. JUSTICE WATTS.

CIRCUIT JUDGE PEURIFOY concurs in the result.

CIRCUIT JUDGES RICE and MAULDIN concur in the result as to the bonds issued under act of legislature.