15865

TRUSTEES OF WOFFORD COLLEGE v. BURNETT, SPECIAL TAX COLLECTOR, *ET AL.*
CONVERSE COLLEGE v. BURNETT, SPECIAL TAX COLLECTOR, *ET AL.*

(39 S. E. (2d), 155)

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, for Wofford College, Appellant, and *Messrs. Lyles & Lyles,* of Spartanburg, for Converse College, Appellant,

94

*Messrs. H. K. Osborne* and *Thomas B. Butler,* of Spartanburg, County Attorneys for Spartanburg County, for Respòndents,

August 12, 1946.

Mr. Associate Justice Stukes delivered the Opinion of the Court.

As indicated in the caption, two cases are embraced in this appeal. They are aftermath of the litigation of the college-appellants in which the opinions of this court are reported, as to Wofford College, in 201 S. C., 315, 23 S. E. (2d), 9, and, as to Converse College, in 201 S. C., 335, 23 S. E. (2d), 16. The controversies there were between them and the city of Spartanburg in their respective efforts to secure exemption from municipal taxation of the real estate in the city which was owned but not occupied by them, under the terms of Act No. 900 of the Acts of 1936, 39 Stat., 1652. The legislation was held unconstitutional and void. Part of the effort in the present appeals is to obtain review and reversal of these former decisions, to which, however, for the reasons stated in them and upon reconsideration, we adhere.

Separate decrees were made in the Circuit Court, after joint trial upon stipulations of the facts, but comprehensive judgment was entered only in the *Wofford College case,* that disposing of the claims of Converse College being formal except with respect to a single issue relating to it. We shall deal with the cases as if they were one and this opin-

ion will be filed in both cases in the lower court for it disposes of the appeals in both.

■ The former decisions of this court in which the Act of 1936 was held unconstitutional were filed in November, 1942, and the cases were ended in December of that year upon the filing of orders on petitions for rehearing. See the citations, *supra*. Meanwhile, and before the final adjudication of unconstitutionality, the Comptroller General of the state had upon petitions of appellants issued abatements of the state, county and school taxes formerly assessed against the properties in question, upon the *ex parte* showing that they came within the terms of the 1936 Act, and the county officers made entries upon their records to the effect that the properties were exempt from taxes. After the decisions of this court and following the rule of them, the county officers reversed their former actions and re-entered the properties for taxation, and because of nonpayment, executions were issued and placed in the hands of the County Tax Collector. In December, 1943, the colleges brought the present actions against the Tax Collector, the County Treasurer and the County Auditor, to enjoin them from proceeding further with the enforcement and collection of the taxes upon the ground that they had been abated by the Comptroller General, which abatements were binding upon the defendants. Upon verified complaints, the Circuit Court temporarily restrained the defendants as prayed. Thereafter the court continued the restraint *pendente lite* upon the giving of bonds by the appellants. The unappealed orders thereabout, dated December 20, 1943, became the law of the case, insofar as they went, and are important for they fixed the status of the litigants and provided that the defendants were restrained during the pendency of the actions from levying upon, advertising, or selling the properties involved under execution for taxes, without prejudice to the rights of the state and county with respect to said taxes and executions which existed at the time of the commencement of the actions. The following is a portion of the order in the *Wofford College case*:

"It appears that the Plaintiff has heretofore marketed and disposed of the major portion of the property described in the complaint and it is conceded that whatever liability, if any, may exist for taxes referred to in the complaint, will rest upon Wofford College and not upon the purchasers of said property. For that reason, the controversy, for all practical purposes, is one between Wofford College and the State of South Carolina and County of Spartanburg. Under these circumstances, it seems to me necessary, as a condition precedent to the continuancy of this restraining order, that Wofford College shall execute a bond, in the penal sum of $3,-500.00 conditioned upon the plaintiff paying to the obligees of said bond such damages as they may sustain by reason of the injunction granted in this proceeding, including payment by Wofford College of all taxes, penalties and costs for the year 1933 with respect to the properties, or any of the properties, referred to in the complaint, which it may ultimately be adjudged were due and owing to the County and State at the time of the commencement of this action, and the collection of which was, or is, prevented by the continuance of the injunction herein."

The order in the *Converse College case* is identical with that in the *Wofford College case,* except that the order in the *Converse College case* contains this additional paragraph:

"The bond herein required shall be complementary and in addition to the liability of the plaintiff under the stipulation heretofore executed by it, and nothing herein provided shall be regarded as impairing or restricting any obligation of the plaintiff under such stipulation, but shall simply be in addition thereto."

Bonds were duly given by both appellants pursuant to the orders and were afterward supplemented and increased during the litigation to protect the payment of taxes for succeeding years.

Counsel for the colleges and the defendants, now respondents, entered into the aforementioned stipulations of fact for the hearing of the cases on the merits, important parts of which are here reproduced:

"5. That heretofore and prior to the year 1933, the colleges had invested certain portions of their endowment funds in mortgages on the various parcels of real estate involved in these actions, such mortgages being executed by the several then owners of the several properties.

"6. That the several owners of the properties involved subsequently defaulted in the payment of the several mortgage debts and the colleges thereupon acquired title to all of the parcels of real estate involved, at different times, either by deeds executed by the owners of such property in satisfaction of the mortgage debts or by way of foreclosure of the mortgages held by the colleges. That there is attached to this Stipulation an abstract, marked Exhibit 'A', giving certain particulars of the acquisition of the several parcels of property by Wofford College, and a similar abstract, marked Exhibit 'C', giving certain particulars of the acquisition of the several parcels of property by Converse College, which separate abstracts are to be considered as part of the proofs in the two respective cases, applying to the particular college's case to which the respective abstracts are designated as applying.

"7. That the colleges either still own the said properties, or subsequent to the tax abatements hereinafter referred to, have conveyed the same to others, agreeing to indemnify and guarantee the colleges' respective grantees against the payment of any of the taxes involved in these actions."

The stipulations then recite the regular return and assessment of the property for taxes, nonpayment thereof, issuance of the usual executions, etc.; that thereafter the colleges filed applications with the Comptroller General for abatements upon the strength of the Act of 1936 and the fact that the properties were owned by the colleges which did

not receive sufficient revenue to pay the taxes; that the Comptroller General thereupon issued to the county officers orders of abatement which were entered and credited as valid; and that the Tax Collector notified the colleges in writing about September 1, 1943, of his intention to levy upon and sell the properties for the delinquent taxes, which he prepared to do until enjoined in these proceedings. Paragraph eighteen of the stipulations is as follows:

"18. That if the taxes, penalties and costs involved in this proceeding, and covered by the orders of abatement aforesaid, were liens and collectible by levy, execution and sale at the time of the commencement of these actions, then as between the parties hereto, they are payable by the colleges without the defendants actually proceeding with formal execution and sale of the properties, and defendants need not take such steps, but the said taxes will be paid severally by the colleges, if and as ordered paid by the Court in these cases."

The very lengthy stipulations also contain recitals of fact which are pertinent to minor issues and they will be referred to in the disposition of the latter later herein.

The cases were heard together in the lower court as has been said, and resulted in judgments against both colleges on all issues, whereupon this appeal was prosecuted by them upon exceptions which raise the questions which will be discussed. The eighth relates only to the contention that the former decisions of this Court hereabout (201 S. C., 315, 23 S. E. (2d), 9, and 201 S. C., 335, 23 S. E., (2d), 16) are erroneous and should be overruled. Disposition adverse to appellants has already been made of this.

■ The seventh exception concerns the course of the trial judge in awarding judgments in favor of the Tax Collector, for and in behalf of the state and county and against the colleges for the various items of taxes on the several properties involved; and it is objected that the state and county are not parties to the actions and no prayer for such relief

was made. Referring to this exception, respondents duly noted "additional sustaining grounds" wherein it is contended that the terms of their stipulations bar appellants from taking the stated position and that they are bound in this respect by the provisions of the orders of injunction *pendente lite*. Reference to the terms of the orders and the stipulations, portions of which have been quoted hereinabove, is convincing that appellants are so bound by the record that they cannot contend as set forth in this exception. They actively participated in the procurement of the orders and voluntarily entered into the stipulations which carved out a course of contest unusual in its nature and beneficial to appellants, which they cannot now disavow. The statutory plan of contest of the validity of property taxes provides for payment under protest and subsequent suit for recovery. Secs. 2807 *et seq.*, Code of 1942.

Appellants' main battle cry is that when the lower court held that the tax abatements were void because founded upon the terms of an unconstitutional statute it applied without warrant a rule of absolute retroactive invalidity, and the authority of *Chicot Co. Drainage Dist. v. Baxter State Bank,* 308 U. S., 371, 84 L. Ed., 329, 60 S. Ct., 317, is relied upon. It is seen that the necessary inquiry is, What effect did the subsequent adjudication of unconstitutionality of the Act of 1936 have upon the prior tax abatements which were issued by the Comptroller General under the terms of that act? Consideration of the *Chicot case* shows that the authority of it is inapplicable here. It involved an earlier adjudication by a lower Federal court of rights based upon an act of Congress, the constitutionality of which was not then raised, and upon it was rested the rule of *res judicata.* Here there was no such prior court decision. The actions of the administrative officers of the state and county were not an adjudication of the act or application of its terms by a court. This is sufficient distinction between the cases and there are others which appear upon careful reading.

Reliance is also had by appellants upon the interesting authority of *Herndon v. Moore,* 18 S. C., 339, which approved and applied to the facts of that case the old maxim of English origin *communis error facit jus.* A free translation is "common error makes right". Before adoption of the constitution of 1868 the Courts of Ordinary exercised a limited jurisdiction of proceedings to partition real estate. By the new constitution Courts of Probate were substituted for the former similar courts but their jurisdiction was defined without including partition. Nevertheless at the first session of the General Assembly thereafter an act was passed whereby it was attempted to vest the new probate courts with jurisdiction to hear and determine actions for partition. They proceeded to exercise such jurisdiction for about ten years and until the decision of *Davenport v. Caldwell,* 10 S. C., 317, and meanwhile there were numerous partition proceedings commenced and completed in the probate courts of the several counties of the state; the practice came within the cognizance of the Circuit and Supreme Courts of the state without condemnation. But not until *Davenport v. Caldwell* was question of the constitutionality of the legislative act directly raised and the result was as stated—the act was held unconstitutional.

The background of *Herndon v. Moore, supra,* was that partition of a very large amount of real estate, lying in three counties, was effected by action in the probate court and the property was sold and acquired by several purchasers. Then came the decision of *Davenport v. Caldwell* which prompted the plaintiff in the *Herndon case* to bring suit in the Court of Common Pleas for confirmation of the prior partition and sales in the probate court. The case was tried on circuit by the able Judge Hudson who applied the "common error" rule and held that the parties and purchasers in the partition proceeding in the probate court were thereby bound and the titles acquired at the sales beyond attack, despite *Davenport v. Caldwell.* The appeal therefrom was heard by the notably strong Supreme Court which was composed of

the then Chief Justice Simpson and Associate Justices Mc-Iver and McGowan. The last named wrote the clear and convincing opinion, in the result of which the other members of the court concurred, whereby the judgment of Judge Hudson was affirmed and application of the common error rule upheld.

The latter was defined at length, its history and foundations reviewed, and it was very clearly stated that the rule is exceptional and should be applied with the greatest care. It was pointed out that the long-standing practice of partition in the probate court was generally received as valid and was expounded and administered by other courts of justice, and especially that many persons had purchased land throughout the state upon faith in its validity. None of these elements is present in the case before us. On the contrary, it is stipulated between the parties that such of the properties as were sold by appellants were, in effect, deemed by them to be possibly subject to the tax liens now resisted, so agreements of indemnity against liability for the payment of them were given to the purchasers. Moreover, this court upon first opportunity condemned the Act of 1936 as unconstitutional. *Strong v. City of Sumter*, 185 S. C., 203, 193 S. E., 649.

The opinion in *Herndon v. Moore* laid down the general rule that an adjudication of unconstitutionality of a statute ordinarily reaches back to the date of the act itself, which is the principle decisive of the case in hand. Illustration of it is found in the leading case of *State ex rel. Nuveen v. Greer,* .... Fla., ...., 102 So., 739, 37 A. L. R., 1298. There, bonds were sold by a municipality and interest paid thereon for years. Then there was an attack in a taxpayer's action which resulted in a finding of unconstitutionality. The conclusion of the Court can best be given by quotation from the opinion, as follows:

"Where, in adjudicating litigated rights under a statute, it appears beyond all reasonable doubt that the statute is in

conflict with some express or implied provision of the Constitution, it is then within the power and duty of the court, in order to give effect to the controlling law, to adjudicate the existence of the conflict between the statute and the organic law, whereupon the Constitution, by its own superior force and authority, eliminates the statute or the portion thereof that conflicts with organic law, and renders it inoperative *ab initio,* so that the Constitution, and not the statute, will be applied by the court in determining the litigated rights. The courts alone are by the organic law empowered to authoritatively declare or to adjudge a statute to be in accord with or in conflict with the Constitution, so that the statute, if valid, stands, or, if contrary to organic law, will by the operation of the Constitution be rendered invalid from its enactment. 12 C. J., 800. The opinions of officials and of attorneys and others that a statute is valid may be persuasive in a judicial determination of the matter, but such opinions, and acts done pursuant to such opinions, do not affect the power and duty of the court to adjudge a statute to be in conflict with organic provisions, when in the judgment of the court there is such conflict; nor do such opinions and acts affect the operation of the dominant force of the Constitution in rendering the statute inoperative *ab initio,* to the extent that it conflicts with the supreme law as judicially determined."

The accompanying annotation of the case cites as illustrative of the rule our decision of *Feldman v. Charleston,* 23 S. C., 57, 55 Am. Rep., 6. In that case the city of Charleston issued two million dollars in bonds pursuant to the purported authority of an ordinance of City Council which was confirmed and ratified by an act of the General Assembly. Upon attack after years of interest-paying the court held that the purpose of the issuance of the bonds was a private one which rendered the authorizing ordinance and act unconstitutional, and the city was not estopped by the subsequent payment of interest, purchase of some of the bonds in the market, etc., so as to cure the unconstitutionality of

the issue. The authority of *Herndon v. Moore*, 18 S. C., 339, was invoked but the peculiar facts of it were reviewed to differentiate it and the exceptional doctrine of *communis error facit jus* was held inapplicable. Similar differentiation and more of it are apparent in the facts of the case now before us; here there was not even any "common error".

The following sentence from 11 Am. Jur., 830, is worth quoting: "But rights acquired under a statute that has not been adjudged valid are subject to be lost if the statute is adjudged invalid, though the statute was considered valid by eminent attorneys, public officers, and others". The Comptroller General may well have considered the Act of 1936 constitutional, under which he entered the abatements pursuant to the administrative tax statutes, secs. 2727 *et seq.*, Code of 1942; but it is more important that neither he nor his inferiors (the county officers) had authority to question the constitutionality of the act, let alone to decide it. They proceeded as ministerial officers are ordinarily obliged to do, accepted it as valid and proceeded to apply it until it was judicially determined that appellants were not entitled to its purported benefits. *Greenville County Fair Assn. v. Christenberry*, 198 S. C., 338, 17 S. E. (2d), 857. The terms of the act and the facts established by the petition left nothing for the discretion of the Comptroller. He could only issue the abatements and as to them it was said in *Nat. Union Bank v. Neil*, 106 S. C., 173, 90 S. E., 745: "Of course, it is not meant that they would be effective, if contrary to law, but merely that underofficers must obey them, until they are overruled by competent authority".

We are not dealing with an adjudication of a competent court based upon an unconstitutional act which to that time had not been authoritatively declared invalid, as in the *Chicot case, supra.* Here there were only the abatements by the Comptroller General and the book entries of them by the inferior tax officials, the county officers, which acts were all ministerial in nature. None of these officials should have refused to act because he thought the law unconstitu-

tional; his duty was to follow it until judicially declared invalid. Possibly a different problem would be presented, as to which we express no opinion, if the rights of appellants to any of the abatements for any of the years involved had been upheld by a court of competent jurisdiction before the final adjudication of unconstitutionality of the act. 36 A. L. R., 492. We remark, too, that we are not dealing with an "innocent" purchaser of the property who bought in reliance upon the abatements. But see in this connection: *Farrow v. City of Charleston*, 169 S. C., 373, 168 S. E., 852, and *Baker v. State Highway Department*, 166 S. C., 481, 165 S. E., 197. These authorities annihilate any idea of estoppel by reason of the actions of the officers.

The problem at hand bears some analogy to the situation created by a change of court decisions, the reversal of a former adjudication of a common-law principle or the construction of a statute, and the declaration of a new rule. A very interesting opinion on that difficult subject, by then Associate Justice Vinson of the District of Columbia Court of Appeals who recently became Chief Justice of the United States Supreme Court, is found in *Warring v. Colpoys*, 122 F. (2d), 642, 136 A. L. R., 1025, (*certiorari* denied, 314 U. S., 678, 62 S. Ct., 184, 86 L. Ed., . . . .).

■ Under the rather simple facts of this case the court cannot undertake to breathe life into the form of the invalid statute without itself violating the constitution in the particular offended by the act. If it were not so, the tax provisions of the constitution might be made a mockery by passage wholesale of invalid acts of exemption upon the faith of which abatements might be issued by administrative officers before any one should intervene in the courts; and if appellants' theory were followed, the abatements would constitute a bar against adjudication of unconstitutionality of the acts for the years and the taxes which the abatements undertook to erase. This consideration buttresses our conclusion that the argument of appellants is unsound.

■ Turning to the other issues, the first which we consider is the contention that the respondents are not entitled to their judgments in behalf of the state and county for the latter's revenues have not been defeated, at least not to a fatal extent (we suppose it is intended to say) for they are still operating. This specious argument is based upon the constitutional requirement (Art. 10, Sec. 2), that operating deficits be annually wiped out by new tax levies. *State ex rel. Edwards v. Osborne,* 193 S. C., 158, 7 S. E. (2d), 526. By this token it is concluded that whatever deficits the abatements caused have been made up. No reason or authority was stated or cited in argument to support this novel position, and none suggests itself to us. The members of the tax-paying public lost by reason of the abatements and it is they who will recoup by payment now into the public treasury. Followed to its logical conclusion, appellants' theory might excuse every defaulter after a year of delinquency, yet the law provides a ten-year lien for taxes levied by the State. Sec. 2834, Code of 1942.

■ Appellants' fifth question arises upon the sixth exception. They foreclosed mortgages upon some of the properties in question during the period of supposed validity of the abatements and bid them in, some at nominal amounts, and receipted the selling officer for the proceeds after payment of court costs; taxes were not paid. As to these transactions, the lower court held under the authority of *Grier v. City Council,* 203 S. C., 203, 26 S. E. (2d), 690, that the "surplus" proceeds of sale in appellants' hands were impressed with a trust for discharge of the tax liens which were not over ten years old at the time of sale; and further that the properties are subject to liens for any balance of taxes which were not past due ten years at the time of the commencement of these actions. Appellants challenge the last stated conclusion. But this disposition is correct for the taxes were senior liens and were not upset by the foreclosure actions to which the state and county were not parties. Sec. 2569, Code of 1942; *Smith v. Gatewood,* 3 S. C., 333; *Bomar*

*v. City of Spartanburg,* 181 S. C., 453, 187 S. E., 921. It is well settled by these authorities that real property subject to taxes cannot be sold in foreclosure free of the existing tax liens, unless provision for payment is made and they are paid.

There remains for consideration the ninth exception which makes appellants' eighth question, relating solely to Wofford College. It acquired property formerly of Eureka Development Company by deed of the receiver for the latter, dated June 11, 1936. This resulted from the petition of the college to the court whereby it sought a conveyance in satisfaction of the mortgage held by it. The master found that the debt was $4,262.50, without attorney's fees, and that the property was then worth about $4,500.00, and that state and county taxes in arrears were $1,306.40 and city taxes, a junior lien, $805.19. There was no express assumption of payment of the taxes by the college. The receivership was a general one and usual in form, in which the court ordered that other actions by creditors be stayed. The decree authorizing the conveyance recited the finding that there was no equity (value) in the property over and above the mortgage debt and the accrued taxes, and that the college should be enabled to secure title with the least possible cost (expense). It does not appear that the receivership of the Development Company has been concluded and the receiver discharged.

No substantial argument has been advanced why this property is of a different status from that of other mortgagors who conveyed to appellants in satisfaction of their respective mortgages. Capital is attempted to be made of the fact that the college did not expressly assume payment of the taxes, from which it is suggested that the receiver must have intended to pay the taxes out of other funds; and that in view of the continuance of the receivership, the state and county should be required to first apply there for the payment of the past due taxes on the property before being permitted to subject it, in the college's hands, to the tax

liens. This supplies no sound reason for reversal of the conclusion of the trial court that this former Eureka Development Company property is just as subject to the liens of the unpaid taxes as are the other properties involved in the actions. It could with apparently equal force be urged that respondents be required to first pursue the personal liability of appellants' other mortgagor-grantors for payment of the taxes which were originally assessed against them, and that has not been contended.

All of the exceptions have been carefully considered in the light of the arguments submitted but are found to be without merit, and they are overruled.

Judgment affirmed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, TAYLOR and OXNER concur.

MR. CHIEF JUSTICE BAKER concurs in result.