16638

BROWN v. MOSELEY

(71 S. E. (2d) 591)

2

*Messrs. Samuel Want, Sam Rogol,* and *Leroy M. Want,* of Darlington, *for Petitioner,*

*Messrs. John K. deLoach* and *J. Claytor Arrants,* of *Camden,* and *Robinson, Robinson* and *Dreher,* of Columbia, *for Respondent,*

*Messrs. Samuel Want, Sam Rogol,* and *Leroy M. Want,* of Darlington, *for Petitioner, in Reply,*

June 12, 1952.

STUKES, Justice.

This action is in the original jurisdiction by permission of the court because of the public nature of it and the desirability of early decision. Plaintiff is an elector and taxpayer of Kershaw County. No question has been made of his capacity to prosecute the action, or that a justiciable controversy exists between the parties. He challenges the defendant's right to hold office as sheriff of the county beyond the year 1952 and asserts that an election for the office should be held in this election year.

G. B. DeBruhl was elected as sheriff in 1946 and re-elected for a second term in 1950. He died in 1951 and the defendant was appointed by the Governor to fill out the unexpired term, which he contends runs through the year 1954.

The Constitution of 1895, Art. V, Sec. 30, provides for the election of a sheriff by each county for the term of four years, and until their successors are elected and qualify, which duplicated Art. IV, sec. 30, of the Constitution of 1868, so was not new. The Constitution of 1895 also directed in Art. VI, sec. 5, the codification of the laws and there was first published thereunder the Code of 1902. It contained as Sec. 253 the following:

"There shall be a general election for the following County officers, to wit: County Supervisors and County Superintendents of Education, held in each County at every general election for members of the House of Representatives; and for the election of Sheriff, Coroner and Clerk of the Court of Common Pleas, at every alternate general election, reckoning from the year one thousand eight hundred and eighty-eight, except as to the Counties of Berkeley and Cherokee, and except for Sheriff and Coroner in Hampton County.

"The Probate Judge in every County, and the Clerk of Court in Berkeley and Cherokee Counties, and the Sheriff and Coroner in Berkeley, Cherokee and Hampton Counties. shall be elected at every alternate general election, reckoning from the [year] one thousand eight hundred and ninety."

And as Sec. 820, the following:

"There shall be an election for Sheriff held in each County, execpt in the Counties of Berkeley, Cherokee and Hampton, at the general election in 1904, and on the same day in every fourth year thereafter. In the Counties excepted the election shall be in 1902."

This was merely carrying forward the statutes which were in effect prior to the adoption of the Constitution of 1895 as is seen from the following excerpts from the Revised Statutes of 1893:

Sec. 211. "There shall be a general election for * * * Sheriff * * * at every alternate general election, reck-

oning from the year one thousand eight hundred and eighty-eight, except as to the Counties of Berkeley and Hampton."

Sec. 703. "There shall be an election for Sheriff held in each County, except the Counties of Berkeley and Hampton, at the general election in 1892, and on the same day in every fourth year thereafter. In the Counties excepted the election shall be in 1894."

Subsequent codifiers have faithfully followed this seeming statutory duplication in the subsequent decennial codes and that now current (of 1942) contains as part of sec. 2350 the following:

"There shall be a general election for * * * sheriff * * * at every alternate general election, reckoning from the year one thousand eight hundred and eighty-eight, except as to the counties of Berkeley and Cherokee, and * * * Hampton". In the excepted counties the reckoning shall be from 1890.

Sec. 3473 of the Code of 1942 follows:

"There shall be an election for sheriff held in each county, except in the counties of Berkeley, Cherokee and Hampton, at the general election in 1904, and on the same day in every fourth year thereafter. In the counties excepted the election shall be in 1902. Provided, that in Beaufort County the sheriff shall be elected in the general election in 1934, and in the general election every four years thereafter."

Beaufort County became an exception to the schedule provided by those statutes for the most of the counties by amendment of the last quoted section, 3473, by Act No. 92 of 1933, 38 Stat. 97. There are doubtless sound, historical reasons for the exception of the named counties from the majority schedule but they have not come to light in the argument or consideration of this case. They may well be similar to that which came to exist with respect to Kershaw County.

The records in the office of the Secretary of State show that Kershaw County first departed from the general sched-

ule of the statute in 1918. A vacancy occurred after the election in 1916 of W. W. Huckabee and I. C. Hough was appointed to fill the vacancy early in 1917, but gave up the office in 1918 when Grover C. Welsh was elected. Quadrennial elections have since been held, reckoning from 1918.

It also appears from the records in the office of the Secretary of State that Allendale and Chesterfield Counties have been electing their respective sheriffs in the same years as Kershaw County and the other counties which are excepted from the general schedule of the statutes, although no amendatory act has been found which is applicable to Allendale and Chesterfield.

The defendant's term of office depends upon the term of his predecessor, DeBruhl, who was last elected in 1950, and in contemplation of the constitution was entitled to a four year term. To this effect is *Limehouse v. Blackwell,* 190 S. C. 122, 2 S. E. (2d) 483 (and earlier authorities there cited), which involved the office of Clerk of Court but it is the subject of a similar constitutional provision to that applicable to sheriff, to wit, Art. V, Sec. 27, Significantly and of controlling importance in this case, the present constitution does not specify a beginning election year for the four year terms. That was left to the General Assembly, doubtless because of the existing lack of uniformity in this respect among the counties, as shown by the statutes and codes which have been cited above. The *Limehouse case* was closely followed by *Privette v. Grinnell,* 191 S. C. 376, 4 S. E. (2d) 305, which was concerned with the office of sheriff and was of the same result. These decisions are relied upon by plaintiff here and would at least tend to support his position but for the present statutory provisions which will be stated. However, it should be pointed out that the cited cases were instituted immediately following attempted elections in admittedly off-years, and are thereby further distinguishable on their facts from the unique case in hand.

The discrepancy between the existing statutes and the generally accepted terms of office of the sheriff of Kershaw

evidently came to the attention of the General Asembly early during its recently adjourned session and there was passed an Act which was approved February 21, 1952, No. 729, modeled after the Beaufort Act of 1933, and entitled, "An Act To Amend Section 3473, Code Of Laws Of South Carolina, 1942, Relating To The Election Of Sheriff So As To Further Provide For The Election Of The Sheriff Of Kershaw County." By the terms of the act, upon its approval sec. 3473 of the Code of 1942 was amended to read as follows:

" 'Section 3473. There shall be an election for sheriff held in each county, except in the counties of Berkeley, Cherokee, Kershaw and Hampton, at the general election in 1904, and on the same day in every fourth year thereafter. In the counties excepted the election shall be in 1902. Provided, that in Beaufort County the sheriff shall be elected in the general election in 1934, and in the general election every four years thereafter. Provided, that in Kershaw County the sheriff shall be elected in the general election to be held in 1954 and in the general election every four years thereafter.' "

Plaintiff's contention is for a literal application of the old statutes as they were before the amendment of 1952, whereby it is claimed that the sheriff's election in 1918 in Kershaw County and at every four-year interval since should be declared null and void. However, such drastic adjudication, if otherwise necessary, which is not conceded, is obviated by the terms of the Act of 1952. In apparent recognition of that, plaintiff has attacked the constitutionality of the act, principally upon the ground that it violates sub-section IX of section 34 of Art. III of the Constitution of 1895, which prohibits a special law where a general law can be made applicable. However, the immediately following provision of the constitution contains the proviso, within which the act plainly comes, that the General Assembly may enact special provisions in general laws. This is usually a difficult subject upon which there have been many decisions, of which a late one is *Owens v.*

*Smith,* 216 S. C. 382, 58 S. E. (2d) 332; they are con-
veniently collected and digested in Vol. 17 of the new
West's S. C. Dig., p. 182 *et seq.,* Statutes, Key No. 66 *et seq.*
However, the propriety of special provision of law under
the facts of this case appears to be so unmistakable that we
think it unnecessary to review the decided cases thereabout,
or even cite them in more detail. The amended statutes here
in question are of force generally throughout the State with
special quadrennial dates for the elections in certain of the
counties, and uniformly provide the four-year terms which
are specified by the constitution.

They have long contained special provisions similar to
that added by the amendment of 1952, as seen at length
above, in the form of exceptions of certain named coun-
ties, which was evidently necessary to fit the schedule of
constitutional quadrennial elections of sheriffs in those
counties. Likewise, when it came to the attention of the
General Assembly that Kershaw County had been off the
general schedule since the year 1918, a special provision in
the general law was the logical remedy, and it cannot be
said that the exception of Kershaw County from the general
schedule of the statutes, to fit the facts of many years, was
any more objectionable as special legislation than the ex-
ception of several counties from the general schedule in the
beginning. The statutes upon which reliance is had, already
old, were re-codified as part of the Code of 1902, soon
after adoption of the Constitution of 1895, when, it is well
known, many of its framers were members of the General
Assembly which enacted this first code under it. They doubt-
less had a better grasp of the meaning of the then recently
adopted constitution, in the writing of which they parti-
cipated, particularly in the light of the provisions of its pre-
decessor, than can be readily had by others at this compara-
tively late date. Repeating for emphasis, special provisions
of identical effect of that enacted by the General Assembly
of 1952 with reference to Kershaw County existed as to
other counties (1) prior to 1895 (under the Constitution

of 1868 which contained the same provisions as to special legislation as those of the Constitution of 1895), (2) at the time of the adoption of the constitution of that year and (3) continually since, being included in all of the codes from 1902 to the present. There are not apt to be clearer or more oft-repeated manifestations of legislative determination of necessity for special provisions in the general laws; and the facts which have been recited quite fully support the legislative conclusion and justify it.

Another point of constitutional attack upon the Act of 1952 is that its title was inadequate and misleading and, therefore, violative of Art. III, sec. 17, of the Constitution which requires that an Act shall relate to but one subject, which shall be expressed in the title. The point received scant attention in argument and merits little here. The title of the act is set forth above and shows, we think, compliance with this constitutional requirement. The manifest intention of the legislature was to insert in the law a special provision, as in the case of other excepted counties, to conform the statutory time of election of the sheriff of Kershaw County to the longstanding practice. When the title of the act and its contents are laid beside the constitution, no violation of the latter is apparent; indeed, the contrary is patent. The cases on the subject may be found in 17 S. C. Dig. 201, *et seq.,* Statutes, Key No. 105 *et seq.* Reference to them will show a rule of more liberality in the application of this constitutional provision than is needed to uphold the act presently under attack.

If the General Assembly had not taken timely and effective action, as we have shown that it has, there is a rarely applicable but established doctrine of the law that might be available to the defendant, which we do not decide. It is summed up in the maxim, *communis error facit jus.* It was applied in the landmark decision of *Herndon v. Moore,* 18 S. C. 339. Before the adoption of the Constitution of 1868, Courts of Ordinary, afterward called Probate Courts, were vested with limited jurisdiction of proceedings to partition

the real estate of decedents. The Constitution of 1868 defined the jurisdiction of those courts without expressly including partition. Nevertheless the General Assembly enacted enabling legislation and all concerned thought that the former jurisdiction continued to exist. After ten years of that universal practice the question was raised in *Davenport v. Caldwell,* 10 S. C. 317, and the court held that the Court of Probate had no such jurisdiction under the Constitution of 1868, the legislation so providing notwithstanding. However, in *Herndon v. Moore* the court refused, without recourse to the doctrine of estoppel, to apply the newly established rule retroactively which, in effect, the plaintiff would do here with respect to his contention, despite the continuous and unquestioned practice of thirty-four years and eight and a half sheriff's terms to the contrary; he asserts in his brief, "The elections in 1918 and subsequent years are null and void." The very able Judge Hudson, whose circuit decree was published and affirmed in *Herndon v. Moore,* said this: "It thus appears that not only the profession at large, and the Probate Courts, but the Circuit Courts and the Supreme Court have all recognized and acted upon a conceded jurisdiction to Courts of Probate in matters of partition. *Communis error facit jus."* Long previously Lord Ellenborough had said in the old English case of *Isherwood v. Olknow,* 3 M. & S. 396: "It has sometimes been said *communis error facit jus,* but I say *communis opinio* is evidence of what the law is, not where it is an opinion merely speculative and theoretical floating in the minds of persons, but where it has been the groundwork and substratum of practice." A like consideration was of influence in the recent decision of *Glasgow v. Glasgow,* S. C., 70 S. E. (2d) 432. A more extended review of *Herndon v. Moore* is in *Trustees of Wofford College v. Burnett,* 209 S. C. 92, 39 S. E. (2d) 155, where the authority of it was found to be inapplicable to the facts of that case.

The judgment is for the defendant and the petition-complaint is dismissed.

FISHBURNE, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., dissents.

BAKER, Chief Justice (dissenting).

I respectfully (and as always, reluctantly) dissent from at least the result of the prevailing opinion. If the defendant had been appointed subsequent to the amendment of 1952 of Section 3473 of the Code of 1942, and conceding without so deciding, that the prevailing opinion correctly holds that the amendment is constitutional, then it might be said, with some show of logic, that defendant's term of office would not terminate until following the general election for the office of Sheriff of Kershaw County in 1954; but, under the law as it existed when the appointment was made, the time for the holding of a general election for the office of Sheriff of Kershaw County was in 1952; and the term of office to which defendant was appointed under the authority of Section 3474 of the Code of 1942, necessarily terminates following the general election in 1952, or December 31, 1952.

The result above stated is in accord with the holdings of this Court since the case of *Reister v. Hemphill*, 2 S. C. 325. Whenever the occasion has arisen this Court has pointed out that the *term* of office runs for the period specified in the Constitution, regardless of any vacancy occurring during the term. A person filling a vacancy in a constitutional office "is simply placed in that position to perform the duties of the" office. The *term* is unaffected. *Privette v. Grinnell*, 191 S. C. 376, 4 S. E. (2d) 305; *Limehouse v. Blackwell*, 190 S. C. 122, 2 S. E. (2d) 483; *Cannon v. Sligh*, 170 S. C. 45, 169 S. E. 712; *State ex rel. Huckabee v. Hough*, 103 S. C. 87, 87 S. E. 436; *Wright v. Charles*, 4 S. C. 178.

The constitutional term of office of the sheriff of Kershaw County under the law prevailing prior to the enactment of the 1952 statute was at all times a four year term. There was no authority for an election in 1918. The term which

began after the general election in 1916 continued for four years, and a new term began after each four year period, so that in 1952 an election should be held to establish the beginning of a new term.

If vested property rights were involved in the irregularities in the elections for sheriff in Kershaw County, a different situation might be presented. Here we are afforded an opportunity to conform the term of office of the sheriff of Kershaw County to the constitutional and statutory provisions prescribing the term. What is being done by the majority opinion, on the other hand, is to extend the term of office of defendant's predecessor for a period of two years, thereby enlarging the term to six years.

Stated another way, the Court is in effect preventing the holding of an election at the time when the Constitution and statutes expressly require it, and thereby extending the term of office for a period of two years.

Nothing could be clearer under our decisions than that the term of office of a constitutional officer cannot be enlarged or reduced by legislation. Yet, here the Court is adding two years to the *term* of defendant's predecessor, and giving the appointed encumbent two years of office beyond the period for which he was appointed.

There are no morals involved in this case such as would have been if the plaintiff were attacking or questioning the right of one who had been elected to hold this office for four full years from the date of his election. For instance, if the late Sheriff DeBruhl had not died, and was the encumbent sheriff, and his right to hold the office until 1954 under his election in 1950 was being attacked, the morals and justice of the case would weigh very heavily with the writer. Here, however, the defendant holds the office of Sheriff of Kershaw County by grace of his appointment by his Excellency, Governor Byrnes "until the next general election for county sheriffs" which at the time of his appointment was fixed by law for Kershaw County as the general election in 1952.

From any angle, there will be a vacancy in the office of Sheriff of Kershaw County after the general election of 1952, and the only manner in which the encumbent, the defendant in this case, can lawfully hold such office until the general election in 1954, if the amendment to Section 3473 is constitutional, is for the Governor of this state to re-appoint him as sheriff of said county following the general election in 1952, and he again qualify, unless, of course, some elector becomes a candidate for this office in 1952, and is by the electorate elected.